**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**EASTERN DIVISION**

**DAVID FRIEDEBERG** **PLAINTIFF**

**v.** **NO. 2:18-cv-00061 JM/PSH**

**MARY JO BULLARD and**
**COMMONWEALTH LAND AND TITLE** **DEFENDANTS**

## FINDINGS AND RECOMMENDATION

## INSTRUCTIONS

The following proposed Findings and Recommendation have been sent to United States District Judge James M. Moody, Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

A.  <u>INTRODUCTION</u>. Defendants Commonwealth Land and Title ("Commonwealth") and Mary Jo Bullard ("Bullard") have filed separate motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. <u>See</u> Docket Entry 31, 35.[1] For the reasons that follow, the undersigned recommends that the motions be granted.

B. <u>PLEADINGS</u>. Plaintiff David Friedeberg ("Friedeberg") began this diversity case by filing a <u>pro se</u> complaint. In it, he alleged the following:

> … [Friedeberg] purchased a home located at 203 [South Seventh Street in] West Helena, Arkansas … through Delta Realty who represented both [Friedeberg] and [Bullard]. Delta Realty used East Arkansas Title Insurance Company and their attorney Charles D. Roscopf to handle closing. [Friedeberg] was issued [an] owner title policy through [Commonwealth] without a proper title exam and/or opinion rendered. Their issuance of a policy without a proper title exam was in bad faith.
>
> … [The] property was not legally transferred to [Bullard] and therefore [Friedeberg] does not have a clear title to 203 [South Seventh Street] … This flaw of title should have been detected by [Commonwealth] upon writing a title policy without proper title examination.

<u>See</u> Docket Entry 2 at CM/ECF 4. Friedeberg asked that he be awarded damages for the present value of the lot and residence at 203 South Seventh Street, West Helena, Arkansas, ("residence"), which he estimates to be $125,000.00; for the loss of securing an education for his son; and for the loss of the enjoyment of the residence.

---

[1] Rule 56 provides, in part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

1. <u>Commonwealth's motion for summary judgment</u>. After the issues were joined, Commonwealth filed the pending motion for summary judgment. In it, Commonwealth asked that Friedeberg's complaint be dismissed for the following reasons:

> On December 19, 2014, Commonwealth issued a title policy ... to Friedeberg. Friedeberg later made a claim under that Policy, and Commonwealth paid him the policy limits, which terminates its obligations under the Policy. Nevertheless, Friedeberg has sued Commonwealth seeking damages of $125,000 in his complaint.
>
> Friedeberg's complaint is unclear as to whether he is suing in contract or for negligence. But he has no claim for negligence for two reasons. First, Arkansas law does not permit a negligence claim against title insurance companies "for lack of reasonable care in searching and disclosing the state of title to the property." Ark. Code Ann. 23-103-408(e)(1). The exclusive remedy in such cases "is to file a claim against the title insurance policy subject to the terms and conditions of the title insurance policy." Ark. Code Ann. 23-103-408(e)(2). Second, even if a negligence claim were permitted, it would be barred by the three-year statute of limitations. Ark. Code Ann. 16-56-105. The Policy was issued December 19, 2014, so any negligence by Commonwealth would have occurred before that date. Friedeberg did not file his complaint until April 19, 2018, more than three years after any negligence would have occurred.
>
> The only possible claim that Friedeberg has is for breach of contract and that claim fails as a matter of law because Commonwealth's payment of $8,000, which was the amount of insurance provided under the Policy, terminated its obligations under the terms of the Policy. That $8,000 is the most that Friedeberg can possibly recover under the Policy.
>
> Finally, Friedeberg's bad faith claim fails as a matter of law because he cannot prove that Commonwealth engaged in any behavior sufficiently egregious to support a claim for bad faith.

<u>See</u> Docket Entry 31 at CM/ECF 1-2.

Friedeberg filed a response to Commonwealth's motion. In the response, he maintained that his complaint should be liberally construed and the motion denied, in part, for the following reasons:

3

> ... [Friedeberg] provided a copy of the Warranty Deed ... which the closing attorney who prepared ... [the] legal document stamped "*This instrument prepared by Roscoph & Roscoph, P.A. Attorneys, Helena, Arkansas, but no title examination requested or title opinion rendered.*" ... [B]oth [Friedeberg] and ... Bullard were charged for title search and owners policy. ... The Warranty Deed being stamped by the closing attorney *"... no title examination requested or title opinion rendered,"* clearly shows **bad faith and breach of contract** on Commonwealth ... to issue a policy without a title exam requested [or] opinion rendered. [Friedeberg] purchased a title policy in good faith and with full expectation of title work and review of title company and any other agents of Commonwealth ... [He] furthermore did not receive a certified copy of the Warranty Deed and Title Policy until December 1, 2015 ... [Commonwealth] claims [he] is time barred due to the statute of [limitations] being only three years starting on December 19, 2014, however the closing attorney did not provide a certified copy of the warranty deed and the title policy until December 1, 2015 so at least the three years would have run until December 1, 2018.

See Docket Entry 41 at CM/ECF 2-3. [Emphasis in original].[2]

2. <u>Bullard's motion for summary judgment</u>. Bullard also filed a motion for summary judgment. In it, Bullard asked that Friedeberg's complaint be dismissed, in part, for the following reasons:

> ... [Friedeberg's] complaint alleges that the subject "property was not legally transferred" to ... Bullard ... prior to sale and "therefore [Friedeberg] does not have a clear title" to his purchased property ..., however, there are absolutely no allegations made directly against Bullard or a request for relief against Bullard in [Friedeberg's] complaint. ...
>
> [Friedeberg's] complaint alleges he was issued an Owner's title policy through ... Commonwealth ... without a proper title exam or opinion rendered in bad faith. Discovery in this case reveals a title exam was made by Commonwealth and that an owner's policy was issued in the amount of $8,000.00, and there is no evidence of bad faith on the part of any defendant ...

---

[2] Commonwealth filed a reply to Friedeberg's response. In the reply, Commonwealth again noted that Friedeberg received payment of the policy limits, which terminated Commonwealth's liability under the policy and doomed his breach of contract and bad faith claims. Commonwealth maintained that the bad faith claim also fails because there is no evidence its behavior rose to the level of bad faith.

> [Friedeberg's] complaint further alleges that the subject property was not legally transferred to … Bullard … prior to sale and therefore [Friedeberg] does not have clear title to his purchased property … Discovery has not revealed anything more than what was already known to the parties and of public record at the time of the sale. There is no evidence Bullard withheld information regarding ownership of the subject property and no evidence that Bullard did not have legal title to the subject property at the time of sale. There is also no evidence of anyone challenging [Friedeberg's] title in and to the subject property or that a thorough title search was not conducted.
>
> [Friedeberg's] complaint alleges "the home was to be used as an investment" to ensure funding for son's college education. Response to discovery has revealed [Friedeberg] was unable "to obtain an equity line of credit" due to "concerns to transfer of title," but [Friedeberg] has not revealed where he applied for such credit or the circumstances of any denial or if this was the sole reason for denial. …
>
> … [Friedeberg] has made no allegations that the home was destroyed, that he was unable to use the home, that he was unable to sell the home, that he was unable to insure the home, that he was unable to get title insurance on the home or that he has sustained any actual damages whatsoever to the subject property. Further, discovery has revealed that there was no loss of education, [his] son remained enrolled in school and did receive credit for the semester, and there was no loss of enjoyment of the home, the home is still in [Friedberg's] possession … and said possession has not been challenged. …
>
> [Friedeberg] has received satisfaction of his title claim against … Commonwealth. [Friedeberg] and … Bullard split the cost of owner's title insurance at the time of purchase … [Freideberg] was paid $8,000.00 in satisfaction of his title complaint to Commonwealth against said owner's title insurance policy … Any additional award to [him] on this claim would be a windfall constituting unjust enrichment.

See Docket Entry 35 at CM/ECF 1-4.

Friedeberg filed a response to Bullard's motion. In the response, Friedeberg maintained that his complaint should be liberally construed, and he clarified that a defect in the title to the residence was discovered after he purchased the residence. He additionally alleged the following:

> Per Phillips County Tax Report … the last deed file[d] prior to [Friedeberg's] was a redemption deed which … states Estate of Riley Sanders. … Bullard at no time transferred this parcel of land into her name.
>
> Finally, in the warranty deed signed by … Bullard and James Ralph Bullard on 12th day of December, 2014, it clearly states *"And I hereby covenant with the said David Friedeberg, that I will forever warrant and defend the title to the said lands against all lawful claims whatsoever."*

See Docket Entry 42 at CM/ECF 3. [Emphasis added].[3]

C. FACTS. Commonwealth and Bullard filed statements of material facts as required by Local Rule 56.1(a), and Friedeberg did not controvert the facts contained in the statements. Those facts are therefore deemed admitted pursuant to Local Rule 56.1(c). The facts, derived from the statements and other documents, are as follows:

1. Riley Sanders ("Sanders") died on May 2, 1963; at the time of his death, he owned the residence. See Docket Entry 41 (Exhibit 2) at CM/ECF 8, 9.

2. In Sanders' will, he bequeathed the residence to Lela Woodson ("Woodson") "for and during her natural life." See Docket Entry 41 (Exhibit 2) at CM/ECF 9.

3. The will provided that upon Woodson's death, the residence would pass to a "residuary legacy," which would be held in trust for the benefit of Bullard, then apparently known as Mary Jo Sanders, and two other individuals. See Docket Entry 41 (Exhibit 2) at CM/ECF 9, 13.

4. At some point not clear from the record, Woodson died, and the residence passed to the "residuary legacy."

---

[3] Bullard filed a reply to Friedeberg's response. In the reply, Bullard acknowledged that she "participated" in the sale of the residence and did so because she is "the last remaining person entitled to the residuary legacy, which is why the Court in Phillips County Circuit Court, Case No. CV-2014-39, saw fit to terminate the trust." See Docket Entry 46 at CM/ECF 2-3.

6

5. The residence eventually fell into a state of disrepair and was forfeited to the State of Arkansas in 2008 for non-payment of taxes. See Docket Entry 41 (Exhibit 6) at CM/ECF 30, 32.

6. The taxes were eventually paid, and a redemption deed to the residence was issued by the State of Arkansas to Sanders' Estate, in care of Bullard and the Berry Law Firm. See Docket Entry 41 (Exhibit 6) at CM/ECF 32.

7. On December 19, 2014, Bullard sold the residence to Friedeberg; the purchase price was $8,000.00. See Docket Entry 37 at CM/ECF 1, Docket Entry 41 (Exhibit 3) at CM/ECF 22, Docket Entry 41 (Exhibit 4) at CM/ECF 24.[4]

8. Bullard and Friedeberg were represented by agents with Delta Realty. See Docket Entry 2 at CM/ECF 4.

9. The closing was handled by East Arkansas Title Insurance Company ("East Arkansas") and attorney Charles Roscopf ("Roscopf"). See Docket Entry 2 at CM/ECF 4.

10. Roscopf prepared a warranty deed but did not personally perform a title examination or offer a title opinion. See Docket Entry 41 (Exhibit 5) at CM/ECF 26.

11. He made that fact known by stamping the following language on the warranty deed: "This instrument prepared by Roscopf & Roscopf, P.A., Attorneys, Helena, Arkansas, but no title examination requested or title opinion rendered." See Docket Entry 41 (Exhibit 5) at CM/ECF 26.

12. Although Roscopf did not personally perform a title examination, he ordered one from East Arkansas. See Docket Entry 41 (Exhibit 1) at CM/ECF 6.

---

[4] The undersigned accepts that the purchase price was $8,000.00. It is not clear why the warranty deed filed by Friedeberg as an exhibit to his response to the motions provides for a different purchase price. See Docket Entry 41 (Exhibit 5) at CM/ECF 26.

13. East Arkansas prepared a title examination, the cost of which was shared by Friedeberg and Bullard, see Docket Entry 41, Exhibit 3-4, and they were apparently satisfied with the results because they proceeded with the transaction.

14. On December 19, 2014, the warranty deed was filed in Phillips County, Arkansas. See Docket Entry 41 at CM/ECF 26.

15. The same day, an Owner's Policy of Title Insurance ("policy") underwritten by Commonwealth was issued to Friedeberg. See Docket Entry 33 at CM/ECF 1, Docket Entry 37 at CM/ECF 1.

16. The policy provided for coverage in the amount of $8,000.00. See Docket Entry 33 at CM/ECF 1.

17. Friedeberg moved into the residence and began making substantial improvements to it; he represents that the residence presently has an estimated value of $125,000.00. See Docket Entry 31, Exhibit 5 at CM/ECF 5.

18. Friedeberg attempted to use the equity in the residence to obtain a loan for his son's educational expenses. See Docket Entry 35, Exhibit 1 at CM/ECF 5-8.

19. A defect in the title was apparently discovered, and the lender refused to make a loan on the residence. See Docket Entry 35, Exhibit 1 at CM/ECF 5-8.

20. On January 4, 2018, Friedeberg made a claim against the policy, alleging a defect in the title. See Docket Entry 33 at CM/ECF 1, Docket Entry 37 at CM/ECF 1.

21. The policy contained a provision that limited Commonwealth's liability to the lesser of $8,000.00 or "the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by the policy." See Docket Entry 31, Exhibit 1 at CM/ECF 7.

22. The policy permitted Commonwealth to "pay or tender the amount of insurance under the [p]olicy to the insured," and "payment or tender of the amount of insurance [would] terminate[] Commonwealth's liability and obligations under the [p]olicy." See Docket Entry 33 at CM/ECF 1-2.

23. "After Commonwealth investigated Friedeberg's claim, [Commonwealth] elected to pay him the amount of insurance [coverage] ..." See Docket Entry 33 at CM/ECF 2.

24. On March 30, 2018, Commonwealth sent Freideberg a check in the amount of $8,000.00, i.e., the amount of coverage. See Docket Entry 33 at CM/ECF 2.

D. ANALYSIS. The undersigned begins an analysis of Commonwealth and Bullard's motions for summary judgment by making note of two preliminary matters. First, because Friedeberg is proceeding pro se, his pleadings have been given a liberal construction. See Haines v. Kerner, 404 U.S. 519 (1972). Second, because it is not clear if Friedeberg's complaint sounds in tort or contract, the undersigned will construe the complaint to allege alternative theories.

1. Commonwealth's liability. To the extent Friedeberg's complaint advances a negligence claim against Commonwealth, the complaint warrants no relief for two reasons. First, as Commonwealth correctly observes, Arkansas law does not permit a negligence claim against a title insurance company for "lack of reasonable care in searching and disclosing the state of title to the property." See Ark. Code Ann. 23-103-408(e)(1). The insured's exclusive remedy is to "file a claim against the title insurance policy subject to the terms and conditions of the title insurance policy." See Ark. Code Ann. 23-103-408(e)(2).

Here, Friedeberg maintains that Commonwealth was negligent because "[the] flaw of title should have been detected by [Commonwealth] upon writing a title policy without proper title examination." See Docket Entry 2 at CM/ECF 4. His claim is tantamount to alleging that Commonwealth was negligent because of its "lack of reasonable care in searching and disclosing the state of title to the property." It appears to be undisputed that Commonwealth is a title insurance company. As a result, Friedeberg's only remedy was to "file a claim against the title insurance policy subject to the terms and conditions of the title insurance policy." He filed a claim against the policy, and Commonwealth paid the claim in full.

Second, even if a negligence claim against Commonwealth were permitted, it is barred by the three-year statute of limitations codified at Ark. Code Ann. 16-56-105. The policy was issued on December 19, 2014, so any negligence on the part of Commonwealth must have occurred on or before that date. Friedeberg did not file the complaint at bar, though, until April 18, 2018, or more than three years after any negligence may have occurred.

Friedeberg maintains, however, that the three-year statute of limitations did not begin to run until December 1, 2015, i.e., the day on which he actually received a certified copy of the warranty deed. His assertion has no merit. The warranty deed was recorded in Phillips County, Arkansas, on December 19, 2014, and the recording of the deed gave him constructive notice of its contents. See Ark. Code Ann. 14-15-404(a)(1) (every deed to real property that is recorded shall be "constructive notice to all persons from the time the instrument is filed for record in the office of the county recorder of the proper county").

To the extent Friedeberg's complaint advances a bad faith claim against Commonwealth, the claim warrants no relief for two reasons. First, "to establish a claim of bad faith, the insured must demonstrate 'affirmative misconduct by the insurance company, without a good faith defense, and that the misconduct must be dishonest, malicious, or oppressive in an attempt to avoid [the insurance company's] liability under an insurance policy.'" See Robertson Brothers Farms v. Farmers Mutual Hail Insurance Company, --- F.3d ---, 2010 WL 2471911, 2 (E.D.Ark. 2010) (Moody, J.) [quoting Aetna Casualty & Surety Company v. Broadway Arms Corporation, 281 Ark. 128, 664 S.W.2d 463, 465 (1984)]. Viewing the evidence in the light most favorable to Friedeberg, and giving him the benefit of all favorable factual inferences, there is no evidence of affirmative misconduct by Commonwealth or that its conduct was dishonest, malicious, or oppressive in an attempt to avoid liability under the policy. When Friedeberg made a claim against the policy, Commonwealth paid the policy limits. Commonwealth was required to do nothing else.

Second, Friedeberg's bad faith claim is barred by the three-year statute of limitations.[5] The warranty deed was recorded, and the policy was issued, on December 19, 2014. The recording of the deed gave him constructive notice of its contents, and any bad faith on the part of Commonwealth must have occurred on or before that date. Friedeberg did not file the complaint at bar, though, until April 18, 2018, or more than three years after any bad faith may have occurred.

---

[5] "The Arkansas three year statute of limitations is applicable to tort actions. Ark.Code Ann. 16-56-105. The Arkansas Supreme Court has applied this three year statute of limitations to bar a claim of first party bad faith against an insurance company. First Pyramid Life Ins. Co. v. Stoltz, 311 Ark. 313, 317, 843 S.W.2d 842, 844 (1992)." See Robertson Brothers Farms v. Farmers Mutual Hail Insurance Company, 2010 WL 2471911, 2.

11

To the extent Friedeberg's complaint advances a breach of contract claim against Commonwealth, the claim warrants no relief. In order to prevail on such a claim, the plaintiff must prove, <u>inter alia</u>, that the defendant violated a contractual obligation owed the plaintiff. <u>See</u> <u>Farris v. Conger</u>, 2017 Ark. 83, 512 S.W.3d 631 (2017). Viewing the evidence in the light most favorable to Friedeberg, and giving him the benefit of all favorable factual inferences, Commonwealth did not violate a contractual obligation owed Friedeberg. When Friedeberg made a claim against the policy, Commonwealth paid the policy limits. Commonwealth was required to do nothing else.

2. <u>Bullard's liability</u>. To the extent Friedeberg's complaint advances a negligence claim against Bullard, the complaint warrants no relief.[6] In order to prevail on such a claim, the plaintiff must prove, <u>inter alia</u>, the defendant breached a duty owed the plaintiff. <u>See</u> <u>Yanmar Company v. Slater</u>, 2012 Ark. 36, 386 S.W.3d 439 (2012). Viewing the evidence in the light most favorable to Friedeberg, and giving him the benefit of all favorable factual inferences, there is no evidence that Bullard breached a duty owed Friedeberg. The undersigned so finds for two reasons. First, Friedeberg has failed to show that Bullard did not have legal title to the residence at the time of the sale. She may not have, but he has not made that fact known. Second, East Arkansas prepared a title examination, and Friedeberg and Bullard were apparently satisfied with the results of the examination because they proceeded with the transaction. Thus, she provided him with what they both believed to be a clear title to the residence. The fact that a flaw was later uncovered does not mean she breached a duty owed him. At most, a mistake may have occurred and is why prudent parties obtain title insurance.

---

[6] Bullard does not maintain that Friedeberg's claims are barred by the statute of limitations.

12

To the extent Friedeberg's complaint advances a bad faith claim against Bullard, the claim warrants no relief. Viewing the evidence in the light most favorable to Friedeberg, and giving him the benefit of all favorable factual inferences, there is no evidence of affirmative misconduct by Bullard or that her conduct was dishonest, malicious, or oppressive in an attempt to avoid liability. As the undersigned has noted, Friedeberg has failed to show that Bullard did not have legal title to the residence at the time of the sale. She may not have, but he has not made that fact known. Alternatively, Friedeberg and Bullard were apparently satisfied with the results of the title examination because they proceeded with the transaction. The fact that a flaw in the title may have been uncovered means nothing more than a mistake occurred.

To the extent Friedeberg's complaint advances a breach of contract claim against Bullard, the claim warrants no relief. Viewing the evidence in the light most favorable to Friedeberg, and giving him the benefit of all favorable factual inferences, there is no evidence Bullard violated a contractual obligation owed Friedeberg. Again, Friedeberg has failed to show that Bullard did not have legal title to the residence at the time of the sale. Alternatively, Friedeberg and Bullard were apparently satisfied with the results of the title examination because they proceeded with the sale of the residence. The fact that a flaw in the title may have been uncovered means nothing more than a mistake may have occurred.

Friedeberg notes that Bullard agreed to "forever warrant and defend the title to the [residence] against all lawful claims whatsoever." Bullard has not breached that promise at this time, though, as there is no evidence a claim has been made against Friedeberg's rightful ownership of the residence.

E. <u>RECOMMENDATION</u>. This case, at its core, involves Friedeberg's assertion that the residence was never legally transferred from Sanders' estate to the "residuary legacy," which was held in trust, and then transferred to the beneficiaries of the trust, one of whom was Bullard. <u>See</u> Docket Entry 35, Exhibit 1 at CM/ECF 6. Commonwealth has no liability for any problems arising from Bullard's sale of the residence as Commonwealth honored its obligation under the policy and paid the policy limits. With respect to Bullard's liability, Friedeberg has failed to show that Bullard did not have legal title to the residence at the time of the sale. She may not have, but he has only offered bits and pieces of the title history. Alternatively, Friedeberg and Bullard were apparently satisfied with the results of the title examination because they proceeded with the transaction. The fact that a flaw in the title may have been uncovered means nothing more than a mistake may have occurred and is why the prudent parties obtain title insurance.[7]

There is no genuine dispute as to any material fact and Commonwealth and Bullard are entitled to judgment as a matter of law. Their motions for summary judgment should be granted. This case should be dismissed, and judgment should be entered for Commonwealth and Bullard.

DATED this 6th day of March, 2019.

_____
UNITED STATES MAGISTRATE JUDGE

---

[7] Assuming a mistake occurred, it appears that Friedeberg may nevertheless have some legal recourse. He might commence a quiet title action to cure the flaw in the title.